TROUTMAN PEPPER HAMILTON
SANDERS LLP
Ben L. Wagner (SBN 243594)
ben.wagner@troutman.com
11682 El Camino Real, Suite 400
San Diego, CA 92130
Telephone:  858.509.6000
Facsimile:   858.509.6040

Attorneys for Plaintiff
GUANG TAI HE IMPORT EXPORT,
INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUANG TAI HE IMPORT EXPORT, INC., | Case No. 2:24-cv-930 |
| Plaintiff, | **VERIFIED COMPLAINT** |
| vs. | |
| DANIEL P. MITCHELL, DOES 1-5, inclusive, | **[TRO REQUESTED WITH NOTICE GIVEN BY EMAIL]** |
| Defendants. | **JURY TRIAL DEMANDED** |

168251459

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 El Camino Real
Suite 400
San Diego, CA 92130

1

## **IMMEDIATE TRO RELIEF AND WHY IT IS JUSTIFIED:**

This lawsuit is brought by Plaintiff Guang Tai He Import Export, Inc., owner of the federally-registered FLOORSPLUS brand, whose business is threatened with shutting down and customer relationships at severe risk of irreparable harm if a shipment of 16 containers are not released from detainment immediately.

The containers were detained because the packaging of its vinyl flooring products include the accurate industry-wide generic descriptor "SPC" to denote the type of vinyl flooring it uses.  Lowe's, Home Depot, and hundreds of others use this same generic term to refer to this genus of products.

This industry-standard "SPC" generic terminology for Stone Plastic Composite material was invented over a decade ago as the latest in a long line of vinyl flooring products (product where acronyms are the norm).  The term is generic and no one industry participant – certainly not the small time Defendant Daniel Mitchell – owns the exclusive right to use this generic and purely descriptive term. Generic terms are barred from and do not qualify for trademark protection.  Indeed, Plaintiff as a Maryland company has been importing, distributing and selling SPC flooring to the Mid-Atlantic Region since 2021, and has marked its packaging as such on all its SPC vinyl products since then, never once experiencing any confusion from this universal nomenclature.

Nevertheless, the Defendant (based in City of Industry, California) withheld the generic and widely-used nature of the acronym "SPC" from the USPTO and obtained a trademark registration as a result.  Defendant concocted an aggressive scheme to hold imports hostage to extort $25,000 from each industry participant plus a licensing fee, plus onerous audit rights and a bar on challenging his generic mark. He did so by recording his SPC registration with U.S. Customs (Ex. Q) which is powerless to ignore federal registrations absent court order, letting him cram onerous licenses upon duress-faced industry participants left and right as of late. ***On January 17, 2024, Plaintiff's 16 containers were caught in this snare, non-***

VERIFIED COMPLAINT

168251459

*litigation attempts have proved futile, and February shipments risk the same fate.*
*Just as this filing was being printed the morning of February 2, Plaintiff received*
*notice that __more__ SPC flooring containers were just detained.*  Ex. L.

The 16 detained containers in the detained shipment contain 7 SKUs of SPC flooring for which Plaintiff's Maryland warehouse has no stock, 2 containers are OEM of Plaintiff's biggest customer, many customer orders are past-due on delivery as a result of this hold-up, and Plaintiff's 99% in-stock track record is being severely damaged.  And the delay is causing ruinous financial hardship in the form of storage fees and delayed turnaround that Plaintiff counts on to satisfy the net payment terms from its foreign manufacturer.  This is just the start, as Plaintiff imports multiple SPC flooring shipments each month marked with "SPC", including a number of such shipments scheduled for February, risking detention of future shipments that will further expand and deepen the irreparable harm – more containers were detained by U.S. Customs on February 2 as these papers were being finalized to file. If relief is not granted, because the validity of the federal registration cannot be challenged through U.S. Customs or the Court of International Trade, the likely result is seizure of the goods.  Simply put, Plaintiff is less than a week away from losing its most valuable customers, is at risk of seizure of the detained goods based on an invalid trademark registration, and will be unlikely to keep its doors open absent a TRO and preliminary injunction.

Meanwhile, Plaintiff is just one more of hundreds of flooring companies marketing "SPC" in the United States, and presents no cognizable harm to Defendant if its importing is allowed to continue.  The "SPC" mark is generic and Plaintiff's use is both of a generic mark and a 100% fair use protected by trademark law.  A California individual is not harmed by one more company continuing the industry-wide practice of using "SPC" to refer to its stone plastic composite flooring, the same as Home Depot, Lowe's and many third parties who will keep doing so regardless of whether Plaintiff does so.

VERIFIED COMPLAINT

168251459

1    Thus, as Plaintiff is likely to succeed, a TRO to remove the detainment and

2    allow Plaintiff's import (and all necessary acts thereto) is essential and warranted.

3    To this end, the Ninth Circuit has affirmed a federal injunction resulting in

4    release of detained goods where the contested mark "fire safe" had sufficient

5    evidence of genericness for safe companies, including use by 13 other safe

6    companies and the plaintiff had used "fire safe" for years. *Stuhlbarg Intern. Sales*

7    *Co. v. John D. Brush and Co.*, 240 F.3d 832 (9th Cir. 2001). That decision expressly

8    held U.S. Customs and the Court of International Trade lacked jurisdiction to hear

9    trademark challenges concerning detained shipments and administrative remedies

10   would be futile.

11   Here, there are far more third party uses – hundreds as the evidence submitted

12   with this verified Complaint shows, because the term "SPC" is the generic

13   abbreviation for the equally generic term "Stone Plastic Composite" (aka "Stone

14   Polymer Composite") – an entire genus of vinyl flooring products. And Plaintiff's

15   use of "SPC" is nothing new and has been going on for over 3 years.

16   Thus, in relevant part to interim TRO and injunctive relief, Plaintiff brings

17   this action and seeks: (1) declaratory relief finding Defendant Mitchell's trademark

18   invalid and generic, (2) declaratory relief finding Defendant's '381 Registration

19   invalid for fraud on the USPTO, and (3) declaratory relief finding Plaintiff's use of

20   "SPC" to be non-infringing because the asserted mark is generic, Plaintiff's use is

21   protected fair use, and the required likelihood of confusion for infringement is

22   wholly lacking.

23   On these bases, ***Plaintiff is entitled to TRO and injunctive relief, to avoid the***

24   ***resulting irreparable harm from continuing, including***: (1) barring Defendant from

25   attempting to enforce the generic "SPC" mark against Plaintiff, including U.S.

26   Registration No. 5,305,381 (2) directing U.S. Customs to immediately release

27   Plaintiff's detained 16 containers <u>and the additional containers detained just this</u>

28   <u>morning literally as these papers were being finalized</u> (Ex. L), not to seize said

1  goods, and not to detain any further of Plaintiff's shipments for use of the terms
2  "SPC" or "SPC FLOORING", (3) directing U.S. Customs to immediately remove
3  the '381 Registration from its recordation of registered marks (including said
4  recordation depicted in Ex. Q), (4) requiring Defendant to cooperate with Plaintiff's
5  import including by providing a letter of authorization permitting Plaintiff to import
6  its current shipment and any future shipments (including during the pendency of this
7  suit) notwithstanding their use of the term "SPC" on the packaging, and (5) such
8  further relief as necessary to stop Defendant from directly or indirectly interfering in
9  Plaintiff's import and sale of SPC flooring.

10

11      Plaintiff GUANG TAI HE IMPORT EXPORT, INC. brings suit for, and for
12  its Complaint against Defendant Daniel P. Mitchell ("Defendant") alleges and states
13  as follows:

14                              **THE PARTIES:**

15      1.      Plaintiff GUANG TAI HE IMPORT EXPORT, INC. ("Plaintiff" or
16  "GUANG TAI HE") is a Maryland corporation with its principal place of business
17  located at 1371 Western Avenue, Baltimore, MD 21230.

18      2.      Defendant Daniel P. Mitchell is an individual who resides on
19  information and belief at 20819 Currier Road, Suite 300, City of Industry, CA
20  91789 and is subject to the general jurisdiction of this Court, a Court which he has
21  instituted suit in previously for his business disputes.

22      3.      DOES 1-5 are the other actors in Defendant's trolling and attempt to
23  monopolize the common generic term SPC, including through blocking imports of
24  flooring products using this generic term, and all Defendants are acting in concert,
25  and are jointly and severally liable for the actions alleged herein.

26      4.      Defendants' actions alleged herein were those of themselves, as well as
27  his agents and/or licensees, and Defendants are jointly and severally liable for the

28

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

- 5 -
VERIFIED COMPLAINT

1  conduct of one another as though taken themselves (referred to collectively herein as

2  "Defendant" or "Mitchell").

3  **JURISDICTION AND VENUE**

4  5.    This court has subject matter jurisdiction over all claims under inter alia

5  28 U.S.C. §§ 1331 (federal question), 1338(a) (trademark), and 15 U.S.C. 1119

6  (cancellation of trademark registrations).

7  6.    This Court has personal jurisdiction over Defendant Mitchell because,

8  on information and belief, he resides in and has his principal place of business in

9  City of Industry, California, and is a citizen of California.  In his recent filing in this

10  Court, Defendant Mitchell admitted: "Daniel Paul Mitchell (hereinafter "Mitchell")

11  is an individual residing [in] the City of Rancho Cucamonga, County of San

12  Bernadino, State of California."

13  **FACTUAL ALLEGATIONS**

14  **"SPC" or "Stone Plastic Composite" Flooring**

15  7.    Two of the main types of flooring installations are floating floors (loose

16  lay and free lay), often achieved using "Click Together" systems, and Direct Glue

17  Down.  The products are often manufactured by various manufacturers in China and

18  throughout the world.  They are then sold to end users by different distributors and

19  retailers.  *See* Exhibit A[1].

20  8.    For plastics and vinyl flooring, generic acronyms for the flooring

21  material have always reined supreme.  Think "PVC" – hardly an average American

22  can say what the acronym actually stands for, but the acronym carries the day.  "In

23  flooring, we have our own set of acronyms (like most industries)" – included in the

24  lineup is: LVP (Luxury Vinyl Plank), LVT (Luxury Vinyl Tile), WPC (Wood

25

26

27  _____

[1] All Exhibits hereto are true and correct copies and are the documents they purport
28  to be.  Where voluminous, certain relevant portions thereof have been submitted at
time, rather than the entire document.

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

Plastic Core), **SPC (Stone Plastic Core or Composite)**, PET (Polyethylene Terephthalate), PTT (Polytrimethylene Terephthalate).[2]

9.      One generic flooring acronym in that list is "SPC."  The term "SPC" is the genus of surface covering goods made with a sturdy vinyl top layer but a core made of a composite ("c") of crushed stone ("s") and plastic ("p") core.  When spelling it out, the "SPC" acronym is denoted "stone plastic composite," although the convenient spelling results in some spelling it out with "polymer" instead of "plastic" and some using "core" instead of "composite."[3]  Simply put, ***the most universal name for this genus is the acronym "SPC."***

10.      As one neutral industry expert has sworn under oath based on 40+ years of experience, even as of 2020, the flooring and surface covering industries and the relevant consuming public understood that the term "SPC" refers to those surface covering products with a stone plastic composite core. *See* Exhibit A (Expert Declaration of Kenneth Newson).  "Neither SPC nor WPC are brand or manufacturer-specific" and SPC is "a generic flooring term … used generically in the flooring industry for several years."  *Id.*

11.      This is no obscure genus of vinyl flooring:  "SPC flooring, also known as Stone Plastic Composite flooring, is the most in popular type of vinyl plank in 2024."[4]

---

[2] https://www.carpetgarage.com/lvp-lvt-wpc-spc-abc-what-do-all-these-acronyms-stand-for/ (true and correct quote and acronyms from citation are included above).

[3] E.g. https://www.flooringinc.com/buyers-guide/spc-vs-wpc.html#:~:text=As%20it%20turns%20out%2C%20it,form%20even%20over%20uneven%20subfloors ("So what does SPC stand for? As it turns out, it stands for a couple of terms that are used interchangeably:  stone plastic composite or stone polymer composite"); https://www.llflooring.com/b/education/flooring-basics/flooring-terms-and-lingo-guide-vinyl-flooring-acronyms (Stone Polymer Composite); https://www.carpetgarage.com/lvp-lvt-wpc-spc-abc-what-do-all-these-acronyms-stand-for/ (Stone Plastic Core); https://www.allacronyms.com/flooring/abbreviations/2 (Stone Plastic Core.

[4] https://www.proximitymillsflooring.com/a/blog/spc-flooring

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

VERIFIED COMPLAINT

168251459

12. Third parties have extensively used and continue to extensively use the term SPC as a generic descriptor in the marketplace to describe that their flooring products include stone plastic composite material and fall into that category of products. *See, e.g.* Exs. D  and P (true and correct copies of third-party marketplace use of "SPC" for stone plastic composite flooring); see also Ex. H  (flooring industry news articles using "SPC" as generic class of goods).

13. Defendant Mitchell claimed to the USPTO that Defendants' first-use date of "SPC" as a trademark was January 2016.  Ex. J.

14. However, given that it is generic flooring term that stands for the equally generic "stone plastic composite,"  unsurprisingly near countless third parties used the long-ago coined term "SPC" in its generic sense well before Mitchell either filed for federal registration of or claimed first use of "SPC" as a trademark.  Ex. E (articles demonstrating SPC use as a generic term for a genus of goods prior to 2016).  For example, in a July 2015 article the year *before* Mitchell claims he used "SPC" for the very first time, an article titled "What's The Difference Between WPC Vinyl Floors and SPC Vinyl Floors" began "WPC and SPC are two of the fastest-growing flooring products on the market" and "SPC stands for Stone Plastic Composite or Stone Polymer Composite; instead of wood this core contains limestone powder."  Ex. E at p. 46.

15. Further evidencing its genericness and widespread fair use, the common term "SPC" is also used in many descriptions in various U.S. trademark registrations for flooring products comprised of Stone Plastic Composite.  Ex. F.

16. As further evidence of its genericness and widespread fair use, the USPTO's course and practice is to require flooring companies to disclaim "SPC" in connection with marks for flooring (disclaimer are only required for terms incapable of themselves having non-descriptive trademark significance for the registered goods). See, e.g. Ex. G (examples of the USPTO requiring disclaimer of SPC in connection with flooring marks).

- 8 -
VERIFIED COMPLAINT

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

17.     Indeed, Mitchell's own specimens filed for his '381 Registration's initial application and Section 8 renewal declaration demonstrates generic use of SPC, and even admits outright that as used by him it "stands for Stone Plastic Composite." Ex. B at p. 9 (specimen showing the following on product packaging: "SPC – Stone Plastic Composite"); Ex. C at p. 9 (admitting "SPC® stands for Stone Plastic Composite").

18.     The term "SPC" is so generic and widespread for flooring that Home Depot and Lowe's have **entire sections** of their flooring sections of their websites devoted to the genus of "SPC" flooring, listing all sorts of manufacturers and products, and extensively including "SPC" in the product title to denote that the flooring is made of SPC construction (as opposed to WPC or some other material). *See* Ex. I at 4.  As the Exhibit shows, Home Depot's website provides 790 relevant products while Lowe's carries a more limited selection of 23 products.  *Id.*  Notably, Plaintiff searched extensively on HomeDepot.com and Lowes.com and **none** are Defendant's.[5]

**Convicted Perjurer Mitchell Registers the Generic Term and Concocts an Import Scheme to Extort and Troll Innocent Flooring Companies for Using the Generic Term**

19.     Mitchell claims to own a small-time flooring company Kolay, a Los Angeles local company with 1,000 Facebook followers and an estimated sales revenue of no more than about $200,000 per year.[6]  Like every other flooring company in the country, it became enamored with SPC, and a Google search today shows even looking through the first hundred results of SPC FLOORING NEAR

---

[5] The search was of "Kolay" – the brand Defendant claims to own – across all of HomeDepot.com and Lowes.com, and there were no search results showing a single Kolay product.

[6] https://www.facebook.com/KolayFlooring/about; https://www.manta.com/c/mhxq048/kolay-flooring-international.

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

LOS ANGELES, CA or SPC FLOORING, ***Kolay is not mentioned once***, its page KolayFlooring.com is not included, and none of its products appear to be listed.

20.     As mentioned, Mitchell claims he began using "SPC" in 2016, of course well after the generic term was coined and popularized in the flooring industry as the entire genus stone-plastic flooring products.  Sneaking one by the USPTO, Mitchell the next year, in 2017, applied for and was granted a U.S. Trademark Registration for "SPC" for International Class 27 for "resilient hard surface coverings for floors, walls and other surfaces," U.S. Reg. No. 5,305,381 ('381 Registration hereafter).  Ex. J (Mitchell SPC Registration).

21.     Mitchell knew obtaining this registration was improper and impermissible, as registering a generic term for a genus of goods is a serious offense against the system of federal registration and trademarks law in general:  "A generic mark is one that refers to the genus of which the particular product is a species and is merely descriptive of a product rather than inherently distinctive.  Consequently, such a mark is not entitled to trademark protection.  A trademark applicant has a duty to disclose the fact that [the applied-for mark] is generic at the time of application.  Failure to do so may constitute fraud on the PTO." *Northwestern Corp. v. Gabriel Mfg. Co.*, 1996 U.S. Dist. LEXIS 6137, *18-19, 1996 WL 251433 (N.D. Ill. May 7, 1996).

22.     Failing to disclose this critical fact to the USPTO in order to game the federal trademark registration system was par for the course for Mitchell.  He is amongst the few persons to claim the honor of a perjury criminal conviction for which he served jail time, a conviction for gaming the federal bankruptcy system which he admitted to in a prior partnership dispute before this Court.  *See* Case No. 8:18-cv-00108 at Dkt. 85 p. 6 (11/13/2020) (Mitchell filing admitting "he perjured himself" by filing for bankruptcy while hiding his "ownership interest in a company held in the name of his then wife").

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

VERIFIED COMPLAINT

168251459

23.     Emboldened by Mitchell's successful registration, and watching "SPC flooring, also known as Stone Plastic Composite flooring [become] the most popular type of vinyl plank,"[7] Defendant has embarked on an extortion scheme that has trapped Plaintiff as its latest victim.

24.     Defendant Mitchell recorded the fraudulent "SPC" trademark registration with U.S. Customs as part of its trademark protection program. Ex. Q.[8] As a result, unfortunate flooring companies who make fair use of the generic term for its generic meaning are increasingly having millions of dollars in shipments held up by U.S. Customs and denied entry to the U.S. because its packaging is predictably marked with the generic "SPC."  The shipments are generally only released once the flooring companies pay Defendant Mitchell significant sums of money to issue a letter of authorization, which Defendant Mitchell will only do for paying a hefty price.

25.     The letter of authorization is only given if the victims pay the troll at least $25,000 to get their existing shipment through, promise to never dispute Defendants' fraudulent federal registration, agree to pay royalties on all future shipments, and agree to a purported audit right.

26.     By extracting payments that are less than the perceived minimum cost of litigation from each individual flooring company, Defendants' scheme has succeeded up until recently in remaining under the radar.  However, on December 15, 2023, a Belgian manufacturer with patented SPC technology filed to cancel Mitchell's '381 Registration of "SPC", having fallen victim to many of its own patent licensees and U.S. customers being held hostage by Defendant's trolling activity.  *See* Ex. K (Petition in Cancellation No. 92/083,938).  However, those cancellation proceedings are in their early stages and provide for no interim relief to

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

---

[7] https://www.proximitymillsflooring.com/a/blog/spc-flooring
[8] https://www.uspto.gov/trademarks/protect/customs-and-border-protection.

VERIFIED COMPLAINT
168251459

1   any industry participants because the TTAB lacks the requisite power to grant

2   interim relief or injunctive relief.

3       **Plaintiff's January 2024 Shipment and February 2 Shipment Is Now**

4                        **Caught in the Scheme**

5       27.    Plaintiff Guang Tai He Import Export Inc. (hereafter "GTH Import" or

6   "FLOORSPLUS") is an importer and factory direct distributor of SPC vinyl

7   flooring, and sells its flooring products under the trade name and registered

8   trademark "FLOORSPLUS" (also shown as FLOORS+)  The company incorporated

9   in Maryland in January 2020, its shareholders include Bin Liu (the individual who

10  has verified this Verified Complaint), and is a seller of its own economical and

11  sturdy line of SPC vinyl flooring from a manufacturer in China.  FLOORSPLUS

12  sells to the Mid-Atlantic Region in the United States – its target market is not

13  California or Los Angeles.  It heavily brands through the mark "FLOORSPLUS"

14  because the name is Americanized and is easily recognized.

15      28.    When Plaintiff investigated its business before opening, its President

16  Mr. Bin Liu researched vinyl products at various flooring outlets.  Every store that

17  sold Stone Plastic Composite flooring prominently labeled these genus of products

18  as "SPC" flooring.  Attached as Exhibit N are true and correct examples of the 2019

19  pictures taken during that investigation.  Thus, Plaintiff determined in good faith

20  prior to its first shipment that it too would follow the industry practice of including

21  the type of vinyl flooring product – SPC flooring – directly on the packaging and

22  including information about this type of flooring on its website.

23      29.    The USPTO granted Plaintiff two federal trademark registrations for its

24  trademark FLOORSPLUS, both in Class 19 for "Vinyl flooring."  *See.* Ex. O.

25      30.    Plaintiff has never applied for any trademark registration in "SPC" and

26  uses it purely to identify accurately the generic flooring genus of which its

27  FLOORSPLUS product is comprised of, as shown in the below true and correct

28  screenshot of its website below:

VERIFIED COMPLAINT

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

Why Choose Floors Plus?
FLOORSPLUS is a production of Guang Tai He Import Export INC established in 2020 to provide an economical and sturdy line of SPC Vinyl Flooring into the Mid-Atlantic region. We stock over 500,000 SQFT of flooring for immediate distribution and have the capacity to produce OEM based on vendor
FLOORS+
FLOORSPLUS
Home
Collections
Gallery
About
Contact
Guides
Find Your Dealer
The SPC Flooring Advantage
Transparent wear-resistant layer (0.3-0.5mm)
Anti fade UV coating
Printing decoration layer
Rigid SPC core (4.0-5.5mm)
Pre-attached Padding
STRUCTURE
Waterproof and Damp-proof
As the main component of SPC is limestone power, so it performs well with water and mildew will not happen even with high humidity.
Fire Proof
AIPU SPC flooring has passed CE standard fire-resistant test, the fire rating is Bfl-s1. According to the authorities, 95% of the victims were burned in the fire caused by the toxic fumes and gases. SPC flooring is flame retardant, not spontaneous combustion, leave the flame automatic out in 5 seconds, and won't produce toxic of harmful gases.
Formaldehyde Free
AIPU SPC is high quality lime stone power & PVC resin, without harmful material such as benzene, formaldehyde, heavy metal. The final products passed the test from more than 179 different types of hazardous materials, chemicals etc..;
Dimensional Stability
SPC flooring is extremely dimensional stable because of natural contents. Exposed to 80° heat, 6 hours - Shrinkage ≤ 0.1%; Curling ≤ 0.2mm.
Super Durable Abrasion
SPC flooring has a transparent wear-resistant layer, whose resolution is even higher than 10000 turns if tested as laminate flooring. And testing result of EN660-2:1999+A1: 2003 is Group T, excellent wear-resistance.
Superfine Anti-slip class
Safety is one of our major concerns when making flooring. Accordingly, as a result of specially developed structures with an anti-slip class rating, our SPC flooring performs very well to prevent skidding in damp area.
Easy To Install With Low Requirement Of Subfloor
Compared to traditional LVT, SPC flooring has a distinct advantage because it is rigid core, which can hide many imperfections of subfloor.
Let's Chat!
Professional Team
Creative & Original
Quality Materials
Industry Expertise
© 2022 by Floors Plus. Created with Wix.com

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

31.     Plaintiff stocks over 500,000 square feet of flooring for immediate distribution and also handles OEM to meet vendor requirements.  Its first shipment was on January 17, 2021, prior to which time Plaintiff had already launched its home page www.shopfloorsplus.com, filled with extensive information about its flooring products as shown above –clearly denoted as "SPC" vinyl, and had invested nearly $1 million in the company.

32.     Plaintiff's packaging has also similarly consistently used "SPC" to accurately denote the type of vinyl flooring product it distributes.

33.     A true and correct copy of this packaging as it appears on the product currently denied import by U.S. Customs is below:



TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

168251459

34.     As can be seen above, carrying every indicator of making good faith, non-trademark use purely for a generic descriptor of its materials, the front of the packaging: (1) uses "SPC" as the fourth word in a descriptive sentence "HIGH QUALITY WATERPROOF SPC FLOORING," (2) the script is non-descript (unlike the prominent design that the actual trademark FLOORS+ AND FLOORSPLUS is shown on the packaging), (3) the text is smaller and set apart clearly from the product's FLOORS+ trademark.  Similarly, in using the same "SPC FLOORING" genus-identifier on the side of the packaging, it is (1) placed to the very far right of the long side, (2) its placement is as far away from the FLOORSPLUS trademark as possible.  For both, no "tm" symbol is used to denote a trademark use.

35.     Plaintiff ships millions of dollars of flooring product a year into the United States (all of its flooring products are imported) and has for the past 3+ years been a major distributor of SPC vinyl flooring in the Mid-Atlantic Region.

36.     There have been no trademark issues with import until now.  But on January 8, 2024, Plaintiff's 16 containers of SPC flooring were picked up for U.S. Customs examination at the Baltimore, Maryland port.  On or after January 17, 2024, Plaintiff was notified by U.S. Customs that the containers were detained and denied entry with the cited reason being suspected counterfeits for use of the term SPC FLOORING.  Exs. I & L.  And then, as this Verified Complaint was being finalized this morning (February 2, 2024), Plaintiff received notice of another shipment of containers (beyond the 16 containers) being detained at the Baltimore port for the same use of "SPC" and "SPC FLOORING."  Ex. L.

37.     True and correct pictures of the detained SPC flooring branded as FLOORSPLUS is attached Exhibit N, an example of which was already provided in the paragraphs directly above.

168251459

38.      Plaintiff also provides OEM SPC vinyl flooring, and 2 of the 16 detained containers are OEM product that were purchased from Plaintiff by Indiana Floors.  A true and correct depiction of the packaging of the Indiana Floors packaging is below, which is the same as the FLOORSPLUS branded packaging other than swapping the FLOORSPLUS branding for STONECORE and including a different website:



39.      On January 24, 2024, Maryland counsel for Plaintiff provided U.S. Customs with a written and detailed Request for Release of Detained Goods.  This is the next step in the detention process.

40.      However, in receiving no release despite the obvious non-trademark use of this generic descriptor "SPC", the necessity of Court action became clear.  As the Ninth Circuit has recognized and held, U.S. Customs and the Court of International Trade and its procedures do not empower it to determine the validity of registered trademarks, and it is up to federal courts to determine the validity of a mark that has resulted in an import barrier, and grant appropriate interim (and final) relief to the frozen shipment in the form of an injunction.  *Stuhlbarg Intern. Sales Co. v. John D. Brush and Co.*, 240 F.3d 832 (9th Cir. 2001) (affirming interim injunction to release imported goods being detained by U.S. Customs).

VERIFIED COMPLAINT
168251459

41.     Plaintiff successfully retained California counsel on Wednesday January 31, 2024 who immediately prepared and filed this Verified Complaint and accompanying request for TRO.  However, yet more shipments of SPC flooring were detained by U.S. Customs on this same basis the morning of this filing, February 2, 2024, further deepening Plaintiff's irreparable harm.

42.     Plaintiff cannot acquiesce to Defendant's extortion scheme, or give this federally-convicted perjurer intimate access to and control over its key SPC flooring products, all in return for its use of the industry-wide generic term "SPC" on packaging.  Attached as Exhibit M is a true and correct copy of one of Defendant's recent licenses.

43.     In relevant parts of the required agreement: Section 3 requires an "initiation fee" of $25,000 and quarterly license payments "equal to $0.05 per square foot" for using "SPC." Section 4 provides Defendant with physical audit rights to the licensee's private financial "books, records and operations." Section 6 requires licensee to permit Defendant to "inspect and audit" products and apparently unilaterally impose his will on licensee's SPC flooring products, while providing no concrete details on what that might entail. Section 8.5 requires licensee to keep its eye out for other users of "SPC" and report to Defendant any third party uses of "SPC."  Section 8.1 and 8.3 require licensee to acknowledge "SPC" "is and shall remain the exclusive property" of Defendant and that licensee has no "rights, title, or interest in" SPC besides the right to use it under the license.

**Plaintiff's Massive Irreparable Harm and the Easy Balance of Hardships Are Addressed Only by Granting a TRO and Injunctive Relief**

44.     The result of the above is that, absent immediate TRO and injunctive relief, the continued detention of Plaintiff's 16 containers, and the just-detained February 2 additional containers, is causing and will continue to cause mounting irreparable harm with no commensurate hardship to Defendant from allowing Plaintiff to continue to import its product pending full resolution of this case.

45.     ***Loss of Plaintiff's Biggest Customer, Indiana Floors Relationship***:
Indiana Floors is Plaintiff's biggest customer.  Two of the shipments are OEM
products Indiana Floors purchased from Plaintiff.  Plaintiff has been advised that if
it cannot deliver these goods to Indiana Floors within the next week, Indian Floors
intends to find an alternative supplier.  Because this is a highly competitive
business, not only will that business be lost, but Plaintiff is not likely to win Indiana
Floors' business again.

46.     ***Irreparable Reputational Injury***:  Over the last 12-15 months, Plaintiff
has maintained a greater than 99% rate of timely fulfillment of orders, with the
single delay resulting from one retailer unexpectedly purchasing every ounce of a
SKU from Plaintiff's warehouse.  Plaintiff's typical customers consistently purchase
anywhere from $50,000 to $500,000 per year from it, and that loyalty to the Plaintiff
and its product line is (as reported by its customers and observed by Plaintiff) due to
Plaintiff maintaining consistent stock level which allows its customers to promote
the product lines to all of their customers, reliability of consistent inventory levels
being the hallmark of these relationships.

47.     Plaintiff's role as an importer and factory direct distributor is ensuring
that goods in stock at all times for its retail customers to order and receive at their
warehouse or job site within a reasonable time frame (typically 3-10 days from time
of ordering). Having these containers held at customs means Plaintiff is unable to
fulfill a number of its products when customers order.

48.     As of today, out of Plaintiff's 40 SKU selections, ***7 SKUs are out of
stock with products contained in the 16 containers*** at port (which the February 2
detention will only further cripple). Plaintiff is not able to fulfill many of its
outstanding orders to customers and will likely lose a substantial portion of its
customers and business if a TRO and injunction are not granted.  Thus, Plaintiff
reasonably anticipates that its customer relationships will be irreparably injured as
they seek out alternate suppliers, and will likely not come back due to the

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

1  reputational damage and interference to relationships with customers accustomed to

2  near-100% warehouse availability of all SKUs at all times.  This is in addition to the

3  damage of being pursued by customers for potential contractual breaches for

4  untimely delivery, ripple effects that are difficult to calculate the full extent of.

5        49.  ***Financial Ruin and Seizure****:*  Plaintiff has already incurred nearly

6  $120,000 in additional storage charges on the 16 containers just for the detention as

7  of February 1, 2024, which includes daily charges and per container charges.  The

8  charges are at their maximum per diem rates and are currently running at

9  approximately $6,000 per day, and the February 2 deportation of containers will

10  result in similar costs.  In addition, Plaintiff has net payment terms to its Chinese

11  manufacturer that it depends which require consistent stocking and sale of inventory

12  into its warehouse in order to timely pay from cash flow.  The cost of paying 16

13  containers (and for the February 2 containers in addition) without the normal turn-

14  around is ruinous, on top of the already staggering storage charges for the detained

15  shipment.  If a TRO is not issued and the attempts at obtaining release are

16  unsuccessful and denied by U.S. Customs, the product will be seized by U.S.

17  Customs.  In addition, the risk of repetition for detentions and ever-expanding loss

18  of inventory to Plaintiff is great, as Plaintiff receives regular imports of SPC product

19  marked as such each month, meaning every future shipment is at jeopardy of

20  detention on the same grounds based on Defendant's invalid "SPC" trademark.  In

21  fact, on this very morning of February 2 as this filing was being finalized to file,

22  Plaintiff received a detention notice of yet additional detained containers by U.s.

23  Customs at the Baltimore port.  Ex. L.  Thus, if immediate injunctive relief is not

24  granted, Plaintiff is in substantial and serious financial risk that could lead to it

25  having to close its doors.  Plaintiff is teetering on a fragile moment where every day

26  is critical to its recovery from having its 16 containers detained plus the February 2

27  additional containers.

28        50.  On the flip side, Defendant Mitchell will suffer no meaningful harm.

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

- 19 -
VERIFIED COMPLAINT

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 E. CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

51.     Plaintiff has been importing and selling products with the same "SPC" labeling for the past 3+ years, and has never so much as received any reports of confusion let alone any contact from Defendant.  There is no evidence of any actual harm in three years to Defendant – any suggestion of future harm would be purely speculative and unlikely.

52.     As the evidence attached hereto shows, whether or not the relatively small-time Plaintiff here has its imports stopped, Lowe's and Home Depot will still be selling nationally a host of SPC flooring products that prominently use the "SPC" moniker.

53.     As the evidence attached hereto shows, while picking off companies here and there in Defendant's attempts to extort payment under the radar, there are still literally hundreds of flooring companies that will continue to sell "SPC" labeled product in the United States and advertise it as such.  Those sales will continue whether or not the crowd includes Plaintiff, i.e. it will be either hundreds or hundreds + Plaintiff.

54.     As "SPC" is not exclusively associated with Defendant, there is no indication that Defendant has established any meaningful secondary meaning or brand recognition in "SPC" to associate it with himself in the minds of the consuming public, and there is rampant third-party use.

55.     Indeed, had Defendant Mitchell made meaningful marketing and advertising expenditures to associate "SPC" exclusively with its flooring, in this digital age it is axiomatic that it would and should have broken into at least the first 100 Google search results for SPC flooring, which Defendant has not even done.

56.     As the Ninth Circuit has explained in this situation of non-existent or unlikely harm to the asserted trademark owner: "[T]hat the marketplace is replete with products using a particular trademarked word indicates not only the difficulty in avoiding its use but also, and directly, the likelihood that consumers will not be confused by its use. The fact that the term resides in the public domain lessens the

possibility that a purchaser would be confused and think the mark came from a particular single source…. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other." *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002) (alterations and citations omitted).

57.    Thus, this suit immediately follows.

## FIRST CLAIM FOR RELIEF
### Declaratory Relief re Invalidity and Genericness of "SPC"

58.    Plaintiff realleges and incorporates by reference each and every allegation set forth herein.

59.    Due to Defendant Mitchell's scheme and his resulting detention of Plaintiff's SPC flooring products by U.S. Customs, an actual case and controversy exists between Plaintiff and Defendant as to the validity and genericness of the term "SPC" as used for flooring products made of stone plastic composite.

60.    This Court has jurisdiction under 15 U.S.C. 1119 "in any action involving a registered mark [to] determine the right to registration order the cancellation of registrations, in whole or in part."

61.    Defendant's registration is incontestable and has not become incontestable under 15 U.S.C. 1065.

62.    A mark is not enforceable and its registration is subject to cancellation at any time "on the grounds that it has become generic." *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005) *quoting Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985).

63.    For the reasons stated above, including the rampant evidence of third-party use, industry use, and use as referring to a common genus of goods, the term "SPC" is the generic acronym that refers to the genus of flooring products comprised of stone plastic composite and incapable of trademark protection.

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 El. Camino Real
Suite 400
San Diego, CA 92130

64.     Plaintiff is entitled to a declaration that "SPC" is generic, and an order of cancellation of the Defendant's '381 Registration on the ground that "SPC" is generic for the registered Class 27 "resilient hard surface covering for floors, walls and other surfaces."

65.     In the alternative, Plaintiff is entitled to the same relief on the basis that the term "SPC" is purely descriptive as used by Defendant and Defendant was not entitled to registration absent proof of secondary meaning under a Section 2(f) registration, a form of trademark registration he did not apply for or obtain.

66.     Plaintiff is also entitled to the injunctive relief, in the form set forth in the Prayer for Relief.

## SECOND CLAIM FOR RELIEF
### Declaratory Relief and Cancellation for Fraud on the USPTO

67.     Plaintiff incorporates and realleges herein by reference all allegations as if stated herein.

68.      An actual case and controversy exists and 15 U.S.C. 1119(1) in that Plaintiff is entitled to cancellation of Defendant's trademark registration for fraud on the USPTO.

69.     Defendant knew that SPC was a common term for the genus of stone plastic composite flooring products in 2017 when he applied for and prosecuted registration.

70.     Defendant failed to disclose this fact to the USPTO, knowing and intending that this would mislead the USPTO into granting him a registration on a generic descriptive term and without the need to establish secondary meaning (which he knew could not be done).  Defendant renewed his registration while still withholding these facts, knowingly withholding that "SPC" was not only a generic descriptive term to begin with but that it had become rampantly used as a generic term in the interim from his original registration date.

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

71.    Instead, in both his original application and renewal he represented under oath his (false) belief that he had exclusive rights to use the mark for the registered goods.

72.    As a result, an actual case and controversy exists and Plaintiff is entitled to a declaration and cancellation of Defendant's trademark registration for his fraud on the USPTO.

73.    Plaintiff is also entitled to the injunctive relief, in the form set forth in the Prayer for Relief.

**THIRD CLAIM FOR RELIEF**
**Declaration of Non-Infringement of Plaintiff for Use of "SPC"**

74.    Plaintiff realleges and incorporates by this reference each and every allegation set forth herein.

75.    Plaintiff is entitled to a declaration that it has not engaged in infringement of any rights Defendant has in the term "SPC" and is entitled to continue to use "SPC" in connection with its sale of SPC or stone plastic composite flooring products.

76.    ***First***, **Plaintiff's use is a fair use** expressly permitted by 15 U.S.C. 1115(b)(4):

77.    Plaintiff's use of "SPC" is a non-trademark "use, otherwise than as a mark…of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party."  15 U.S.C. 1115(b)(4).

78.    Plaintiff chose to mark its products with "SPC" when it decided to sell Stone Plastic Composite vinyl flooring for the very reason that its investigation showed it was the most common description for the genus of goods it was selling and used universally or near-universally in the flooring industry for such purpose.

79.    That purpose remains to this day, and as shown above, Plaintiff usually uses "SPC" as part of a sentence or in the generic description "SPC FLOORING."

Plaintiff was at all time unaware of Defendant or its misguided "SPC" registration, and uses the term "SPC" only for its descriptive purposes.

80.     There have been no reported instances of actual name confusion with Defendant (or indeed any other flooring company selling SPC flooring).

81.     *Second*, **there is no likelihood of confusion** in the use of "SPC" phrasing that Plaintiff has made:

82.     Its use is part of a sentence or phrase, not stand-alone as "SPC," and thus is a different term used amongst a crowded field of hundreds of flooring companies using variations of "SPC" phrasing for stone plastic composite flooring.

83.     The parties operate and distribute products in distinct markets, Plaintiff in the Mid-Atlantic Region and Defendant in Los Angeles.  The parties do not operate or market in the same channels, but both have their own websites and physical locations in different states, and Plaintiff is aware of no overlapping customers or target audience for the products.  In fact, distribution following import to the U.S. is generally intensely localized to the warehouse's natural trading area due to the nature of the goods as being construction and building products.

84.     Despite Plaintiff's SPC flooring having been in the U.S. market for 3+ years, and marketed through the same channels even before those first sales, and despite using "SPC" in the same and similar manner up to the present, Plaintiff has received no reports of actual confusion nor has it observed any instances of confusion between Plaintiff and Defendant (or their products).  Indeed, Plaintiff is aware of no name confusion with any other companies and itself based on them using "SPC" in connection with their flooring products.

85.     There is simply no likelihood that Plaintiff's "SPC" marked products are likely to confuse reasonable consumers or target market into believing that Plaintiff or its products are somehow associated specifically with Defendant or his products, as opposed to any other of the hundreds of flooring companies marketing

their stone plastic composite products as "SPC" products throughout the United States.

86.    There are far more prominent Google search results for SPC Flooring than Defendant's, far more products sold at popular chains like Home Depot and Lowe's, and each of these third-party sellers and companies use "SPC" in a far more prominent and extensive manner than the small Defendant, making confusion between the Maryland-based Plaintiff and the California-based Defendant Mitchell utterly implausible.

87.    *Third,* there can be no infringement of a generic mark, and thus because "SPC" is generic for the Stone Plastic Composite vinyl flooring products that Plaintiff and Defendant (and hundreds of third parties) use it with, it is incapable of protection or of being infringed by Plaintiff.

88.    Accordingly, because Plaintiff's use of "SPC" is protected as fair use, because there is no likelihood of confusion, and/or because the mark is generic, Plaintiff is entitled to a declaration of non-infringement as well as the injunctive relief specified in its Prayer for Relief.

## **PRAYER FOR RELIEF**

1.    WHEREFORE, PLAINTIFF prays that the Court grant the following relief:

2.    Judgment in favor of Plaintiff and against Defendant on all claims;

3.    TRO, preliminary and permanent injunctive relief to avoid irreparable harm from continuing, including: (1) barring Defendant from attempting to enforce the generic "SPC" mark against Plaintiff, including U.S. Registration No. 5,305,381 (2) directing U.S. Customs to immediately release Plaintiff's detained 16 containers <u>and the additional containers detained just this morning literally as these papers were being finalized</u> (Ex. L), not to seize said goods, and not to detain any further of Plaintiff's shipments for use of the terms "SPC" or "SPC FLOORING", (3) directing U.S. Customs to immediately remove the '381 Registration from its

TROUTMAN PEPPER HAMILTON SANDERS LLP
11682 EL CAMINO REAL
SUITE 400
SAN DIEGO, CA 92130

- 25 -
VERIFIED COMPLAINT

168251459

1  recordation of registered marks (including said recordation depicted in Ex. Q

2  hereto), (4) requiring Defendant to cooperate with Plaintiff's import including by

3  providing a letter of authorization permitting Plaintiff to import its current shipment

4  and any future shipments (including during the pendency of this suit)

5  notwithstanding their use of the term "SPC" on the packaging, and (5) such further

6  relief as necessary to stop Defendant from directly or indirectly interfering in

7  Plaintiff's import and sale of SPC flooring.

8      4.    Attorney's fees under the Lanham Act because this is an "exceptional

9  case" under 15 U.S.C. § 1117.

10     5.    Costs of suit.

11     6.    Such other, different, and additional relief as the Court deems just and

12  proper.

13  Dated:    February 2, 2024          Respectfully Submitted,

14                                      TROUTMAN PEPPER HAMILTON
                                        SANDERS LLP
15

16

17                                      _/s/ Ben L. Wagner_

18                                      Ben L. Wagner
                                        Attorneys for Plaintiff
19                                      GUANG TAI HE IMPORT
                                        EXPORT INC.
20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT

168251459

<u>VERIFICATION</u>

I, Bin Liu, declare:

I am an officer of GUANG TAI HE IMPORT EXPORT, INC., a corporation organized and existing under the laws of Maryland, which is the Plaintiff in the above-entitled action, and I have been authorized to make this verification on its behalf.

I have read the foregoing VERIFIED COMPLAINT on file herein and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Baltimore, MD on February 1, 2024.

_____, President.
Bin Liu